# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| TOMMY LAMPLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CAUSE NO. 3:08-CV- 282 PS |
| | ) |
| DR. MICHAEL MITCHEFF, *et al*., | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

On October 24, 2005, while being housed at Indiana State Prison ("ISP"), Tommy Lampley sustained serious injuries when another prisoner attacked him with a box-cutter, slashing his right leg to the bone as well as lacerating his left forearm. (DE 64-4, Medical Records at 1.) Lampley has sued a number of people complaining about the medical treatment he received as a result of his injuries. There are several motions pending before the court each of which is addressed below.

## FACTUAL BACKGROUND

After he was attacked by another prisoner, Lampley was taken to St. Anthony's Hospital, where he received treatment from Dr. Rade Pejic. (*Id.* at 3.)[1] Two days later, Dr. Pejic discharged Lampley from the hospital in good condition, with instructions that Lampley's sutures should be removed by November 3, 2005, and that he should receive occupational and physical therapy three times a week for ninety days. (DE 75-2, Medical Records at 1.) Dr. Pejic opined that if Lampley's wounds did not heal, he might need further surgery for nerve injury. (*Id.*; DE 64-4, Medical Records at 3.)

---

[1] The facts stated herein are undisputed unless otherwise stated.

Following Lampley's release from the hospital, he returned to ISP. At the time, Dr. Michael Mitcheff was ISP's treating physician. ®. 64-3, Mitcheff Aff. ¶¶ 4-6, 15.) Upon his return, Lampley was assessed by medical staff, who noted that his sutures were intact and that there was no drainage. He was placed in a holding cell across from the nurse's station, monitored every few hours, and given Vicodin for pain. (DE 64-4, Medical Records at 2.) Because ISP did not have an infirmary, Dr. Mitcheff asked the Classification Department at ISP to transfer Lampley to Wabash Valley Correctional Facility ("WVF") "so he could receive around-the-clock care and remain non-ambulatory." (DE 64-3, Mitcheff Aff. ¶¶ 9, 10; *see also* DE 64-4, Medical Records at 8.)

On October 27, 2005, Lampley was transferred to WVF. While Lampley was housed at WVF, Drs. Noe Marandet and Anwar Jaffre provided Lampley's medical care. (DE 64-4, Medical Records.) Upon his arrival, Dr. Marandet examined Lampley's wounds and ordered Vicodin and Keflex. (*Id.* at 7.) The order for Vicodin was renewed on October 31, 2005, and a nurse cleaned and changed Lampley's bandages. (*Id.* at 10.) On November 1, 2005, Dr. Marandet remarked that Lampley sustained "probable nerve injury" and recommended his transfer to a facility with a physical therapist. (*Id.* at 11.) On November 2, 2005, Dr. Marandet examined Lampley again, noting that his wounds were healing and that he could move all the fingers on his left hand. Dr. Marandet also determined that the sutures were ready to be removed. (*Id* at 12.) The following day, he removed Lampley's sutures and instructed him to refrain from bearing weight on his right leg. Lampley complained of spasms and pain in his leg at level "9" on a scale of "1 to 10." (*Id.* at 11.) That same day Dr. Marandet requested a physical therapy consultation for Lampley, commenting, "He needs PT/OT to regain function in his left wrist."

(*Id*. at 13.) Lampley was approved for "1 PT/OT visit for eval[uation] and treat[ment] with instructions for home exercise program" with the notation, "If additional visits required please send notes." (*Id*.)

Dr. Marandet examined Lampley again on November 4, 2005, and noted that all of his wounds were healed. He prescribed Ibuprofen and Baclofen. On November 6, 2005, Lampley's left arm was placed in a splint. (*Id.* at 13-15.) On November 14, 2005, Lampley complained of a swollen left hand as well as "numbness," "tingling," and a "burning sensation." Dr. Marandet observed that Lampley was able to wiggle his fingers. (*Id*. at 17.) On December 1, 2005, Lampley was seen at sick call complaining of pain and the need for physical therapy for his left hand and right leg. The nurse who examined Lampley noted that the bandage and splint were still on his left hand and that he remained in a wheelchair. (*Id*. at 19.) She referred Lampley to the doctor. (*Id.*) Dr. Jaffre examined Lampley on December 7, 2005, and noted that he could stand but not walk. In addition to ordering Tylenol and Elavil for 30 days, Dr. Jaffre ordered physical therapy. (*Id*. at 20-21.) On January 7, 2006, Lampley again requested to see a doctor. When Dr. Jaffre saw Lampley on January 9, 2006, he renewed the Elavil for ninety days. (*Id.* at 22.) On January 11, 2006, Lampley was transferred back to ISP.[2] (DE 64-3, Mitcheff Aff. ¶ 10.)

After his return to ISP, on January 15, 2006, Lampley submitted a request for health care, stating that his left hand was "really cramped up" and sometimes "tingly" and "numb." (DE 64-4, Medical Records at 23.) He requested that he be immediately transferred to a "licensed

---

[2] The record does not reveal the reason for this transfer or the other transfers that followed, but does show that Dr. Mitcheff was not involved in any transfer decision other than the first one from ISP to WVF. According to the record, the subsequent transfers were the result of decisions made by the Classification or Administrative Department for non-medical reasons. (DE 64-3, Mitcheff Aff. ¶ 20.)

physical therapy facility." (*Id.*) The following day, Dr. Mitcheff examined Lampley. He noted that Lampley had decreased range of motion in his left wrist, but that the laceration on his leg was well healed, with intact muscle from the knee to the right hip. Lampley could bear weight on his leg but Dr. Mitcheff noted that he refused to ambulate. He noted surprise that Lampley was still wearing the flexion splint on his left wrist. Dr. Mitcheff showed Lampley some exercises to perform for his wrist and right leg. He noted that Lampley "will need PT/OT." Dr. Mitcheff's notes indicate that he attempted to perform physical therapy on Lampley but was unable to do so because Lampley was being "belligerent" and uncooperative, refusing to make a fist or ambulate. He also noted that Lampley complained he was not being given "stronger pain pills." (DE 64-4, Medical Records at 24-25.)

On February 11, 2006, Lampley was transferred back to WVF. Dr. Jaffre examined him on February 28, 2006, and noted scars on his left forearm. He opined that Lampley was "malingering" because he would not cooperate in the examination or make a fist. Dr. Jaffre saw no signs of atrophy and believed Lampley had good range of motion in his wrist. As a result, Dr. Jaffre concluded that there was no need for Lampley to receive physical therapy or Vicodin. (DE 64-4, Medical Records at 42.) On April 3, 2006, Dr. Jaffre ordered Elavil for an additional 30 days. (*Id.* at 28.)

On April 6, 2006, Lampley was transferred back to ISP. Upon his arrival, he complained of numbness in his right leg and left wrist. On April 14, 2006, Lampley was transferred back to WVF. (*Id.* at 28-31.) Dr. Mitcheff had no further involvement with Lampley's care after that date. (DE 64-3, Mitcheff Aff. ¶ 15.)

On April 19, 2006, Lampley was seen by medical staff complaining of leg cramps and a

4

back ache, and was found to have full range of motion in all his extremities. (DE 64-4, Medical Records at 32.) On May 2, 2006, physical therapist Sue Chegon performed an evaluation on Lampley, which she termed "unremarkable." She noted Lampley's complaints of numbness, tingling, burning, and spasm, which were reportedly "not constant." Chegon observed a "well-healed flat and motile scar" along Lampley's forearm. She reported that his range of motion in his left wrist was within normal limits. He also had full range of motion in his tendons, including the thumb. Chedon tested Lampley's strength, which was "4/5" on all wrist and hand motions, within the normal range. Chegon gave Lampley a home exercise program for his left wrist and reported that he exhibited the ability to perform these exercises. She determined that no additional physical therapy was indicated. (DE 64-4, Medical Records at 32-33.)

On December 7, 2006, Lampley submitted a health care request, complaining that his hand was "cramped up, tingly, and numb" and his leg was "painful." (DE 64-4, Medical Records at 37.) He requested stronger pain medication and physical therapy. (*Id.*) The nurse referred Lampley to sick call, but the medical records do not reflect whether Lampley saw a doctor in response to this request. On July 11, 2007, Lampley submitted another health care request, stating that he wanted physical therapy and a consultation with a "nerve specialist." (*Id.* at 38.) A nurse referred Lampley to the doctor twice, but he did not keep his scheduled appointments. (*Id.* at 40-41.) On the first occasion, he stated that he was declining to be seen because "the treatment was not to see a nerve specialist or physical therapist." (*Id.* at 40.) On the second occasion, he refused to come out for sick call and refused to sign the medical waiver form stating that he was declining treatment. (*Id.* at 41.)

On January 31, 2008, Lampley was transferred to Westville Correctional Facility

5

("Westville"), where he remains housed to date. (DE 12, Notice of Address Corr.; DE 64-3, Mitcheff Aff. ¶ 14.)

## PROCEDURAL HISTORY

On June 11, 2008, Lampley brought this action against numerous defendants alleging deliberate indifference to a serious medical need in violation of the Eighth Amendment, and the court permitted him leave to proceed against Dr. Mitcheff and Karla Foster, the former Health Care Services Administrator at ISP. (DE 1, Pl.'s Compl.; DE 23, Opinion & Order.) The court later allowed Lampley to amend the complaint to add as defendants Drs. Jaffre and Marandet, who treated him at WVF, as well as Alan Finnan and Dick Brown, the warden and assistant warden at WVF. (DE 70, Pl.'s Am. Compl.; DE 77, Opinion & Order.)

Dr. Mitcheff and Foster now move for summary judgment in their favor. (DE 62, Defs.' Mot. for Summ. J. ("Defs.' Mot.").) Lampley opposes the motion, and has also filed two cross-motions for summary judgment, in which he argues that he is entitled to judgment in his favor against all the defendants.[3] (DE 72, Pl.'s Resp. to Mot. for Summ. J. ("Pl.'s Resp."); DE 103, Pl.'s Cross-Mot. for Summ. J. ("Pl.'s Cross-Mot."); DE 111, Pl.'s Cross-Mot.)

## LEGAL STANDARDS

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[3] Lampley appears to argue that the defendants' motion for summary judgment should be denied as moot because he filed an amended complaint in the interim. (DE 128, Pl.'s Reply in Supp. of Cross-Mot. at 6.) This argument is a non-starter, however, because I already determined that the amended complaint did not change the substance of his claims against these defendants and that I would rule on the defendants' motion without requiring them to refile it. (DE 77, Opinion & Order at 7.)

6

genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986.) A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986.) "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* A party opposing a properly supported summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading" but rather must introduce affidavits or other evidence to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## ANALYSIS

**I.** **Defendants' Motion for Summary Judgment**

    **A.** **Statute of Limitations**

Dr. Mitcheff and Ms. Foster first argue that the claims against them are time-barred.[4] (DE 63, Defs.' Mem. in Supp. of Mot. ("Defs.' Mem.") at 10-11.) Because there is no statute of limitations in 42 U.S.C. § 1983, courts apply the most appropriate state statute of limitations. *Wilson v. Garcia*, 471 U.S. 261, 278-80 (1985). Section 1983 claims are considered personal injury claims, and so the statute of limitations that applies here is the two-year limitations period for personal injury suits under Indiana law. *See* IND. CODE § 34-11-2-4; *Behavioral Inst. of Ind.,*

---

[4] I previously rejected this argument at the pleading stage because after giving Lampley the inferences to which he was entitled at that stage, it could not be determined whether the claims were time-barred. (DE 39, Opinion & Order.) As the Seventh Circuit has recognized, "[d]ismissing a complaint as untimely at the pleading stage is an unusual step," since timeliness is an affirmative defense on which the defendant bears the burden of proof. *Cancer Foundation, Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). I now have a full factual record before me on which to base a statute of limitations analysis.

*LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005). Although state law governs when the claim must be brought, federal law governs when a cause of action accrues. *Wallace v. Kato*, 549 U.S. 384 (2007). Accrual occurs when the plaintiff has a "complete and present cause of action . . . that is, when the plaintiff can file suit and obtain relief." *Id.* at 388 (citations omitted).

Defendants assert that Lampley's claims are untimely because they were not filed within two years of when they accrued. Lampley acknowledges that his claims stem from actions or omissions by the defendants that occurred as far back as 2005 (three years before the complaint was filed), but nevertheless argues that his claims are timely under the "continuing violation doctrine." (DE 73, Pl.'s Mem. at 9-10, 30-34.) The continuing violation doctrine is a legal doctrine that allows a plaintiff to "reach back" to the beginning of allegedly unlawful conduct, "even if that beginning lies outside the statutory limitation period." *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001).

The Seventh Circuit recently observed that "[l]ike too many legal doctrines, the 'continuing violation' doctrine is misnamed." *Limestone Dev. Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 801 (7th Cir. 2008). The court explained by way of example:

> Suppose that year after year, for ten years, your employer pays you less than the minimum wage. That is a continuing violation. But it does not entitled you to wait until year 15 (assuming for the sake of illustration that the statute of limitations is five years) and then sue not only for wages you should have received in year 10 but also for the wages you should have received in years 1 through 9. The statute of limitations begins to run upon injury . . . and is not tolled by subsequent injuries. . . . The office of the misnamed doctrine is to allow suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought. . . . It is thus a doctrine not about a continuing, but a cumulative, violation.

*Id.* at 801. The scenario described by the Seventh Circuit is essentially what Lampley seeks to

8

do here. In Lampley's view, the defendants' deliberate indifference to his serious medical needs persists to this day, because he never received appropriate medical treatment, such as physical therapy or evaluation by nerve and orthopedic specialists, and that his claims against these defendants are therefore timely. (DE 73, Pl.'s Mem. at 30-34.) Under this logic, a prisoner could wait twenty years from when he is first denied medical care to file suit, a result which would run contrary to the analysis in *Limestone Development*. This case is a particularly poor candidate for such an expansive reading of the continuing violation doctrine, since it would have been apparent to Lampley as of May 2006 – when he was evaluated by a physical therapist who recommended that he receive no further treatment – that he was not going to get physical therapy. (*See* DE 64-4, Medical Records at 32-33.) This is not a situation where prison officials simply provided no medical care at all for a prisoner's serious medical need over the course of several years.

Moreover, Lampley's argument fails to recognize that neither Dr. Mitcheff nor Ms. Foster had anything to do with his medical care after April 2006, when he was transferred from ISP to WVF and then ultimately to Westville.[5] (DE 64-3, Mitcheff Aff. ¶¶ 15, 18.) At the latest, the statute of limitations on a prisoner's deliberate indifference claim runs "for as long as the defendants had the power to do something about his condition." *Heard*, 253 F.3d at 318-20. Here, the facts show that as of April 2006, when Lampley left ISP for good, Dr. Mitcheff and Foster no longer had "the power to do something" about Lampley's condition. His claims against

---

[5] Although Dr. Mitcheff is presently the Regional Medical Director for CMS, there is nothing in the record to indicate that he had any involvement with Lampley's care in that capacity; instead, the record shows that treatment decisions are made by each prison's medical director. (DE 64-3, Mitcheff Aff. ¶ 15.)

9

these defendants would have accrued at the latest as of this date, and his complaint filed more than two years later in June 2008 is therefore untimely, entitling these defendants to summary judgment in their favor.

In any event, as discussed below, Lampley's claims against Dr. Mitcheff and Ms. Foster fail for other reasons as well.

**B.  Res Judicata and Collateral Estoppel**

The defendants argue that res judicata and collateral estoppel bar Lampley's claims because he filed an earlier suit in which he raised similar allegations surrounding the denial of physical therapy and other treatment for his injuries resulting from the stabbing. *See Lampley v. Officer John Doe, et al.*, 3:05-CV-808 (N.D. Ind. filed Dec. 23, 2005).[6] "A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies. . . .'" *Ross v. Bd. of Educ. of Tp. H.S. Dist. 211*, 486 F.3d 279, 282 (7th Cir. 2008) (internal citations and quotation marks omitted). These companion doctrines "protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions." *Taylor v. Sturgell*,

---

[6] Lampley also filed a separate suit against Drs. Marandet and Jaffri in the Southern District of Indiana over their alleged failure to provide him physical therapy after he was stabbed. He lost at summary judgment based on his failure to properly exhaust his administrative remedies at WVF, and his appeal to the Seventh Circuit was dismissed for failing to pay the docketing fee. *See Lampley v. Marandet, Jaffri & Thomas*, 1:07cv401 (S.D. Ind. filed Mar. 28, 2007). Although these defendants have raised res judicata and collateral estoppel as affirmative defenses in their answer, they have not yet filed a dispositive motion on this ground. (*See* DE 92, Defs.' Ans. at 23.)

128 S. Ct. 2161, 2171 (2008) (citation and internal quotation marks omitted).

Dr. Mitcheff argues that Lampley's claim against him is barred by res judicata because the prior case named him as a defendant and raised similar allegations against him. Because the prior case was litigated in federal court, federal common law principles of preclusion apply. *Taylor*, 128 S. Ct. at 2171. There are three requirements needed for res judicata to apply under federal law: (1) an identity of the claim; (2) an identity of the parties, which includes those in "privity" with the original parties; and (3) a final judgment on the merits. *Ross*, 486 F.3d at 283. Courts use a "functional approach" in determining whether two cases involve the same claims, and cases will be considered the same for res judicata purposes if they "arise out of the same transaction" or share a "common core of operative fact." *Id.* If this standard is met, any claims that were or could have been raised in the prior action are barred. *Id.*; *Highway J Citizens Group v. U.S. Dep't Transp.*, 456 F.3d 734, 741 (7th Cir. 2006).

In the earlier filed case, Lampley alleged that Dr. Mitcheff was deliberately indifferent to his serious medical need by failing to ensure that he receive physical therapy as ordered by the emergency room doctor who treated him after he was stabbed. (DE 64-5, Pl.'s Am. Compl., *Lampley*, No. 3:05cv808; DE 64-6, Opinion & Order, *Lampley*, No. 3:05cv808.) He also alleged that Dr. Mitcheff improperly had him transferred to WVF knowing that he could not receive appropriate medical treatment there. (DE 64-5, Pl.'s Am. Compl., *Lampley*, No. 3:05cv808.) The district court dismissed Dr. Mitcheff from that case, and Lampley's appeal was dismissed for failure to pay the docketing fee. (*See* DE 64-6, Opinion & Order, *Lampley*, No. 3:05cv808.) Upon review, it is apparent that this case and the prior case against Dr. Mitcheff emanate from the same "common core of operative fact," involve the same parties, and reached a final judgment

11

on the merits.

Lampley nevertheless argues that this case is not identical to the earlier case because it raises different arguments about how Dr. Mitcheff was deliberately indifferent to his medical need. (DE 73, Pl.'s Mem. at 34-36.) However, for res judicata purposes "a claim is not an argument or a ground but the events claimed to give rise to a right to a legal remedy." *Bethesda Lutheran Homes & Servs., Inc. v. Born*, 238 F.3d 853, 857 (7th Cir. 2001). As stated above, both of Lampley's complaints arise out of the same operative facts: Dr. Mitcheff's alleged failure to ensure he received physical therapy for the injuries he sustained when he was stabbed by another inmate. Lampley cannot defeat the application of res judicata simply by wrapping the same facts into a new legal theory. *Ross*, 486 F.3d at 283. For these reasons, the claim against Dr. Mitcheff is barred by res judicata.

Foster also seeks summary judgment on this ground even though she was not a party to the prior suit, asserting that she was in privity with Dr. Mitcheff. (DE 63, Defs.' Mem. at 13.) Individuals are considered to be in privity if their interests are closely aligned with that of a party to a prior suit. *Tice v. American Airlines*, 162 F.3d 966, 971-72 (7th Cir. 1998). When determining whether privity exists, courts do not focus on the formalities of legal relationships but instead apply a "functional" approach, inquiring whether "the earlier parties were in some sense proper agents for the later parties." *Id.* at 971. In other words, "res judicata bars subsequent suits against those who were not party to a prior suit if their interests are closely related to those who were." *Tartt v. Northwestern Comm. Hosp.*, 453 F.3d 817, 822 (7th Cir. 2006).

In considering that question here, it is apparent that Foster's interests are closely aligned with those of Dr. Mitcheff. Both were employees of ISP who are alleged to have violated

Lampley's Eighth Amendment right to adequate medical care by failing to ensure he received physical therapy for injuries he suffered when he was stabbed by another inmate. Courts have found privity to exist between government employees under similar factual scenarios. *See Church of the New Song v. Establishment of Religion on Taxpayers' Money in the Federal Bureau of Prisons*, 620 F.2d 648, 654 (7th Cir.1980) (privity existed among defendants who were all employees of Bureau of Prisons and who had allegedly violated inmate's First Amendment rights); *Little v. Tapscott*, No. 01 C 9738, 2002 WL 1632519 (N.D. Ill. July 23, 2002) (privity existed between state agency officials sued in individual capacities for civil rights violations in separate cases). Similarly, here, I find that privity exists based on the close interests shared by Dr. Mitcheff and Foster.

Lampley argues that principles of res judicata cannot possibly apply since he did not name Foster in the prior suit, but as discussed above, this is not the determinative issue. (*See* DE 73, Pl.'s Mem. at 38.) Because Foster was in privity with Dr. Mitcheff, she is entitled to invoke the doctrine of res judicata to defeat Lampley's claim against her in this case.

### C. Foster's Liability

There is yet another reason why Lampley's case against Foster is a loser. The record shows that Foster, as the former Health Services Administrator at ISP, was responsible for maintaining the medical staff schedule at ISP, hiring medical staff, ordering supplies, and responding to prisoner grievances. (DE 64-3, Mitcheff Aff. ¶ 18.) Under a similar set of facts, the Seventh Circuit held that a prisoner could not raise an Eighth Amendment claim against the individual responsible for processing grievances for allegedly failing to provide him with adequate medical care. *Burks v. Raemisch*, 555 F.3d 592 (7th Cir. 2009). The court explained:

> Public officials do not have a free-floating obligation to put things to rights . . . . Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen. [The] view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right.

*Id.* at 595. Thus, the court held that "a layperson's failure to tell the medical staff how to do its job cannot be called deliberate indifference . . . ." *Id.* at 596. Similarly, prior to *Burks*, the Seventh Circuit made clear that "[i]f a prisoner is under the care of medical experts a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) (citation omitted).

These cases are spot on to Foster's situation. The record shows that Foster was not a doctor, but was instead an administrator whose job was to provide general oversight of the medical office and respond to inmate grievances. Dr. Mitcheff, a trained physician who was responsible for treatment of inmates housed at ISP, was treating Lampley during the period Foster was involved with his case, and Dr. Mitcheff was making determinations about the appropriate services to be provided to Lampley.[7] (DE 64-3, Mitcheff Aff. ¶¶ 6-18.) Under these circumstances, there is no basis for holding Foster liable for the failure to provide medical care.

Lampley attempts to create an issue of fact by pointing to Foster's job responsibilities as

---

[7] Indeed, Dr. Mitcheff recommended that Lampley receive physical therapy, and in May 2006, shortly after he left ISP, he received a physical therapy consult. (DE 64-4, Medical Records at 24-25, 32.)

listed in the DOC's Manual of Policies and Procedures, and asserts that her job duties included making treatment decisions. (DE 75-4, Manual of Policies & Procedures; DE 74, Pl.'s Aff. at 10-13.) But Lampley appears to have confused Foster's position, Health Care Services Administrator, with that of "Medical Director." (*See* DE 75-4, Manual of Policies & Procedures.) The manual specifically provides that while the Health Care Services Administrator is responsible for general oversight of the office, the Medical Director, a licensed physician, "shall be the final authority regarding the provision of medical services in the department." (*Id.* at 5.) Based on the record, Foster is entitled to summary judgment.

Because Lampley's claims against Dr. Mitcheff and Foster fail on these threshold issues, entitling the defendants to summary judgment, I do not reach their arguments regarding the merits of Lampley's Eighth Amendment claims. (*See* DE 63, Defs.' Mem. at 13-19.)

**II.     Lampley's Motions for Summary Judgment**

Lampley has filed two separate cross-motions for summary judgment, one against all six defendants and the other against just Foster and Drs. Mitcheff, Jaffri, and Marandet (collectively "the medical defendants"). (DE 103, Pl.'s Cross-Mot.; DE 111, Pl.'s Cross-Mot.) As an initial matter, the medical defendants move to strike the earlier filed motion as essentially an untimely response to Dr. Mitcheff and Foster's summary judgment motion. (DE 106, Medical Defs.' Resp. to Pl.'s Cross-Mot. at 2.)

I am not unsympathetic to this request, as Lampley has a practice of filing multiple documents in which he raises virtually the same arguments in different formats. For instance, he filed two separate cross-motions for summary judgment, one of which is labeled as an "opposition" to defendants' motion for summary judgment, as well as a separate response to the

15

defendants' motion labeled, "Motion to Dismiss Defendants' Summary Judgment Motion,"and a "memorandum" in support of his response, all of which repeat many of the same arguments. (DE 72, Pl.'s Resp.; DE 73, Pl.'s Mem.; DE 103, Pl.'s Cross-Mot.; DE 111, Pl.'s Cross-Mot.) It is unnecessary for Lampley to raise the same arguments in multiple documents, and this practice only serves to create confusion and clutter the docket. Nevertheless, given Lampley's *pro se* status, I will not strike any of Lampley's documents, but will instead give these documents the consideration and weight that they deserve. Accordingly, the defendants' request to strike is denied.

Lampley's two cross-motions are substantively similar, aside from who they are directed against. (*See* DE 103, Pl.'s Cross-Mot.; DE 111, Pl.'s Cross-Mot.) Because I have determined that summary judgment in favor of Dr. Mitcheff and Foster is warranted, the motions are denied as to them. With respect to the remaining defendants, Lampley appears to be arguing that he is entitled to judgment in his favor because he properly exhausted his administrative remedies. (DE 103, Pl.'s Cross-Mot.; DE 111, Pl.'s Cross-Mot.) The affidavits and other supporting documents he submits primarily attest to the fact that he exhausted his administrative remedies before initiating this lawsuit. (*See* DE 104-3, Pl.'s Aff.; DE 111-4, Pl.'s Aff.) To date, none of the defendants have filed a dispositive motion regarding the failure to exhaust administrative remedies, which is an affirmative defense. *Obriecht v. Raemisch*, 517 F.3d 489, 492 (7th Cir. 2008). Nevertheless, even assuming Lampley is correct, exhaustion is simply a threshold requirement that Lampley must satisfy before he can pursue his claims in court. 42 U.S.C. § 1997e. His compliance with the administrative exhaustion requirement would not entitle him to summary judgment on the merits of his Eighth Amendment claims. Indeed, Lampley appears

confused about what he must show to prevail on a motion for summary judgment, since he states in both motions that there are material fact disputes that necessitate a trial. (DE 103, Pl.'s Cross-Mot. at 5; DE 111, Pl.'s Cross-Mot. at 6.) For these reasons, Lampley's cross-motions for summary judgment are denied.

In their opposition, Defendants Finnan and Brown ask that summary judgment be entered in their favor, even though they have not filed a formal motion seeking such relief. (DE 127, Finnan & Brown's Resp. to Pl.'s Cross-Mot. at 17.) They argue that Lampley has failed to establish that they were deliberately indifferent to his medical needs in violation of the Eighth Amendment. (*Id.* at 11-16.) In support they cite *Jones v. Union Pacific R.R. Co.*, 302 F.3d 735, 740 (7th Cir. 2002), in which the Seventh Circuit held that it was appropriate to grant summary judgment to the non-moving party where there were no material factual disputes and it was clear the non-movant was entitled to judgment as a matter of law. *Jones* did not involve a *pro se* plaintiff, however, and under Seventh Circuit case law (as well as the Local Rules of this District), a *pro se* plaintiff must be given formal notice that the defendants have moved for summary judgment in their favor and advising him what he must do in order to defeat the motion. *See Timms v. Frank,* 953 F.2d 281, 285 (7th Cir. 1992); N.D. IND. L.R. 56.1(e). No such notice was given to Lampley as to these defendants, who were added into the case a few months ago, after the summary judgment motion was filed by Dr. Mitcheff and Foster. Moreover, it appears from the docket that Lampley is still attempting to conduct discovery as to these defendants. (*See* DE 126, Order Denying Mot. to Compel; DE 129, Pl.'s Mot. to Compel; DE 130, Finnan & Brown's Mot. for Ext. to File Resp.) Under these circumstances, summary judgment in favor of Defendants Finnan and Brown cannot be granted in this procedural context,

17

and their request is therefore denied. They may of course renew their request in a properly filed motion after discovery has been completed.

Finally, Lampley also seeks entry of default against Finnan and Brown for failing to timely answer his amended complaint. (DE 107, Pl.'s Mot. for Default.) The docket reflects that these defendants were granted an extension to and including July 13, 2009, to answer Lampley's amended complaint, and they timely filed their answer on July 9, 2009. (DE 96, Order; DE 99, Finnan & Brown's Ans. to Pl.'s Am. Compl.) Therefore, the motion is denied.

## SCHEDULING ORDER

In light of this order, Lampley's claims against Dr. Marandet, Dr. Jaffri, Finnan and Brown remain pending. The following scheduling order is entered with respect to the remaining claims, which, pursuant to Federal Rule of Civil Procedure 16(b), shall not be modified except upon a showing of good cause: all discovery shall be initiated by March 16, 2010; and any dispositive motions shall be filed by June 16, 2010. The parties are reminded that N.D. IND. L.R. 26.2(e) requires that, "In *pro se* litigation, all discovery shall be filed" and N.D. IND. L.R. 56.1(e) requires that "If a party is proceeding *pro se* and an opposing party files a motion for summary judgment, counsel for the moving party must serve a notice upon the unrepresented party as set forth in Appendix C."

## CONCLUSION

For these reasons, the court:

(1) **GRANTS** the defendants' motion for summary judgment (DE 62), and enters summary judgment in favor of Dr. Michael Mitcheff and Karla Foster;

(2) **DENIES** Tommy Lampley's cross-motions for summary judgment (DE 103 and DE

111);

(3) **DENIES** Tommy Lampley's motion for default judgment (DE 107);

(4) **DENIES** the defendants' motion to strike (DE 106);

(5) **ORDERS** that all discovery with respect to the remaining claims shall be initiated by March 16, 2010; and

(6) **ORDERS** that all dispositive motions with respect to the remaining claims shall be filed by June 16, 2010.

**SO ORDERED**. .

Entered: December 28, 2009.

                                         s/ Philip P. Simon
                                        PHILIP P. SIMON, JUDGE
                                        UNITED STATES DISTRICT COURT