# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | | |
|---|---|---|
| TOMMY LAMPLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:08-CV-282 PPS |
| | ) | |
| DR. MICHAEL MITCHEFF, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **OPINION AND ORDER**

Tommy Lampley sustained serious injuries when he was stabbed by a fellow inmate. He filed this multi-count, multi-defendant case *pro se* claiming that he did not receive proper medical care for his injuries following the attack. All but two of the defendants have been granted summary judgment. (DE 131, 176.) The two remaining defendants Dr. Anwer Jaffri and Dr. Noe Marandet, physicians who treated Lampley while he was housed at Wabash Valley Correctional Facility ("WVCF"), now seek summary judgment. (DE 169.)

## **FACTS**

On October 24, 2005, Lampley suffered multiple stab wounds while being housed at Indiana State Prison ("ISP"). (DE 171-3 at 1-3.) He received emergency medical treatment at St. Anthony's Hospital from Dr. Rade Pejic. (*Id*. at 3-4.) Dr. Pejic discharged Lampley from the hospital the following day in good condition, with recommendations that his sutures be removed in two weeks and that he receive physical therapy for his left hand three times a week for ninety days. (*Id.* at 3; DE 186 at 18.) Upon his return to ISP, Lampley was assessed by medical staff; his sutures were intact and there was no drainage from his wounds. He was placed in a holding cell across from the nurse's station, monitored every few hours, and given pain medication. (DE

171-3 at 5-8.) Because ISP did not have an infirmary, ISP's treating physician, Dr. Michael Mitcheff, requested that Lampley be transferred to WVCF. (*Id.* at 8.)

On October 27, 2005, Lampley was transferred to the infirmary at WVCF, (*id.* at 9), where Dr. Noe Marandet was his treating physician. (DE 171-2 at ¶ 9.) Dr. Marandet examined Lampley that day and prescribed Vicodin and another medication. (DE 171-3 at 9-10.) The order for Vicodin was renewed on October 31, 2005, and a nurse cleaned and changed Lampley's bandages on that date. (*Id.*) The following day, Dr. Marandet remarked that Lampley may have sustained nerve injury and recommended his transfer to a facility with a physical therapist. (*Id.* at 11.) On November 2, 2005, Dr. Marandet examined Lampley again, noting that his wounds were healing and that he could move all the fingers on his left hand. (*Id.* at 12-13.) Dr. Marandet determined that Lampley's sutures were ready to be removed (*Id.*), which they were the following day. Dr. Marandet also instructed him to refrain from bearing weight on his right leg. (*Id.* at 11.) He prescribed pain medication, and also requested a physical therapy consultation for Lamprey's left wrist. (*Id.* at 13-14.)

Dr. Marandet examined Lampley again on November 4, 2005, and noted that all of his lacerations had healed. He prescribed Baclofen. (*Id.* at 15-16.) On November 6, 2005, Lampley's left arm was placed in a splint. (*Id.* at 16.) On November 7, 2005, Lampley was approved for one physical therapy visit with the notation, "If additional visits required please send notes." The request was approved by someone with the initials "D.R." (DE 171-3 at 13.) On November 8, 2005, Dr. Marandet released Lampley from the infirmary to the general prison population. (DE 171-2 at ¶ 9.) Dr. Marandet was not involved in Lampley's care after that point. (*Id.*)

On November 14, 2005, Lampley was examined by a nurse at WVCF, and it was noted that his left hand appeared swollen and that he complained of numbness and tingling. (DE 171-3 at 17.) Lampley was able to wiggle his fingers on his left hand. (*Id*.) She removed his bandage, cleaned his left hand, and re-applied a splint and bandage. (*Id.*) On November 19, 2005, Lampley was again examined by a nurse. It was noted that his splint was in place, that he voiced no complaints, and that he was not in any apparent distress. (*Id.* at 18.)

On December 1, 2005, Lampley was seen at sick call complaining of pain and asking for physical therapy for his left hand and right leg. The nurse on duty referred Lampley to the doctor. (*Id.* at 19.) On December 7, 2005, Dr. Anwar Jaffri – the other defendant remaining in this case – examined Lampley and noted that he could stand but could not walk. Dr. Jaffri ordered pain medication and Elavil for 30 days, and also ordered physical therapy. (*Id.* at 20-21.) Dr. Jaffri saw Lampley again on January 9, 2006, and renewed the Elavil for ninety days. (*Id.* at 22.) On January 11, 2006, Lampley was transferred back to ISP.[1] (*Id.* at 20, 23-27.)

On January 15, 2006, Lampley was seen by medical staff at ISP and signed a release of information. (*Id.* at 24.) On January 16, 2006, Dr. Mitcheff examined Lampley. (*Id.*) He noted that Lampley had decreased range of motion in his left wrist, but that his leg was well-healed, with intact muscle from the knee to the right hip. He noted that Lampley "refuses to ambulate" and questioned why Lampley was still wearing a splint on his left hand. (*Id.*) He noted that

---

[1] It is not clear from the record why Lampley was transferred multiple times during this period, but there is nothing to indicate these defendants were involved in any of the transfer decisions. Evidence in the record shows that transfers occur for a variety of reasons, including the prisoner's safety classification and behavior. (DE 186 at 23-27.) Although transfer requests may be made by the inmate, facility staff, or classification staff at IDOC's central office, the final decision to transfer is made by IDOC classification staff. (*Id.*)

Lampley could bear weight on his right leg to get to the exam table. He opined that Lampley needed "PT/OT." He discussed with Lampley the need to do range of motion exercises for his hand and leg, and showed him how to perform these exercises on his own. (*Id.* at 24-25.) Dr. Mitcheff's notes indicate that he attempted to perform physical therapy on Lampley on that date but was unable to do so because in his view Lampley was being "very belligerent" and refused to make a fist. (*Id.*)

On February 11, 2006, Lampley was transferred back to WVCF. (*Id.* at 26-27.) Dr. Jaffri examined him on February 28, 2006, and noted scars on his left forearm. (*Id.* at 42.) He opined that Lampley was "malingering" because he would not cooperate in the examination or make a fist. Dr. Jaffri saw no signs of atrophy and opined that Lampley had good range of motion in his wrist. As a result, he concluded that Lampley did not need physical therapy or Vicodin. (*Id.*) On April 3, 2006, Dr. Jaffri ordered Elavil for an additional 30 days. (*Id.* at 28.)

On April 6, 2006, Lampley was transferred to ISP. (*Id.* at 29.) Upon his arrival, he complained of numbness in his right leg and left wrist. (*Id.* at 29-31.) On April 14, 2006, Lampley was transferred back to WVCF. (*Id.* at 31.) When assessed by medical staff he complained of "headaches" and "bellyaches." (*Id.*) On April 19, 2006, Lampley was seen by medical staff at WVCF and complained of headaches, leg cramps, and backaches, but he was found to have full range of motion in all his extremities. (*Id.* at 32.)

On May 2, 2006, physical therapist Sue Chegon performed an evaluation on Lampley at WVCF. She termed the evaluation "unremarkable." (*Id.* at 32-34.) She noted Lampley's complaints of numbness, tingling, and spasm, which were reportedly "not constant." Chegon observed a "well-healed flat and motile scar" along Lampley's left forearm. She reported that his

range of motion in his left wrist was within normal limits. She also concluded that he had full range of motion in his tendons, including the thumb. Chegon tested Lampley's strength, which was "4/5" on all wrist and hand motions, within the normal range. Chegon gave Lampley a home exercise program and reported that he exhibited the ability to perform these exercises. She determined that no additional physical therapy or other follow up was indicated. (*Id.*) According to Chegon's notes, Lampley told her that he disagreed with her evaluation and accused her of "covering up" for the delay he experienced in receiving a physical therapy assessment. (*Id.* at 33.) On May 5, 2006, Dr. Jaffri discontinued Lampley's Elavil. (*Id.* at 35.)

On December 7, 2006, Lampley submitted a health care request, complaining that his hand was "cramped up" and gets "tingly and numb sometimes," and that his leg was "painful." (*Id.* at 36.) He requested stronger pain medication and physical therapy. (*Id.*) The nurse referred Lampley to sick call, but the medical records do not reflect whether Lampley saw a doctor in response to this request. On July 11, 2007, Lampley submitted another health care request, stating that he wanted physical therapy and a consultation with a neurosurgeon. (*Id.* at 37.) A nurse referred Lampley to the doctor twice, but he did not keep his scheduled appointments. (*Id.* at 38-41.) On the first occasion, he stated that he was refusing to be seen because "the treatment was not to see a nerve specialist or physical therapist." (*Id.* at 40.) On the second occasion, he refused to come out for sick call and refused to sign the medical waiver form stating that he was declining treatment. (*Id.* at 41.) On January 31, 2008, Lampley was transferred to Westville Correctional Facility ("Westville"), where he remains housed to date. (DE 12, Notice of Address Change.)

**LEGAL STANDARDS**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). To determine whether a genuine issue of material fact exists, I must construe all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). Summary judgment is not appropriate if I must choose between competing inferences, nor can I weigh the credibility of witnesses, since these are functions of a jury. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 627 (7th Cir. 2006); *Abdullahi v. City of Madison*, 423 F.3d 763, 770 (7th Cir. 2005).

**ANALYSIS**

**A.   Statute of Limitations**

Drs. Jaffri and Marandet first argue that the claims against them are time-barred. (DE 170 at 9-11.) For statute of limitations purposes, Section 1983 claims are considered personal injury claims, and so the two-year limitations period for personal injury suits under Indiana law applies. *See* IND. CODE § 34-11-2-4; *Behavioral Inst. of Ind., LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005). Although state law governs when the claim must be brought, federal law governs when a cause of action accrues. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Accrual occurs when the plaintiff has a "complete and present cause of action . . . that is, when the plaintiff can file suit and obtain relief." *Id.*

Lampley filed his complaint naming Drs. Jaffri and Marandet as defendants on April 24, 2009. (DE 70.) He acknowledges that he is suing them over events occurring as far back as 2005,

6

but nevertheless argues that his claims are timely under the "continuing violation doctrine." (DE 181 at 15-16.) Under that doctrine, a plaintiff is permitted to "reach back" to the beginning of an allegedly unlawful course of conduct "even if that beginning lies outside the statutory limitations period." *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001). The doctrine applies to claims like this one where an inmate alleges that an on-going lack of medical treatment constitutes deliberate indifference under the Eighth Amendment. *Id.* But the doctrine has limits, and in the context of prisoner's deliberate indifference claims, the claim doesn't accrue "as long as the defendants had the power to do something about his condition." *Id.* at 318.

Here, the record shows that neither of the defendants were involved in Lampley's medical care after 2006.[2] (DE 171-2 at ¶ 3; DE 171-4 at ¶¶ 3-13; DE 171-3 at 1-42.) After that point, it was up to Lampley's treating physician to make decisions regarding his care, including whether to order physical therapy or a consultation with a specialist. (DE 171-2 at ¶ 10.) Accordingly, Lampley has not demonstrated that the defendants had "the power to do

---

[2] Lampley asserts in one of his briefs that he saw Dr. Marandet with the physical therapist on the date of the therapist's evaluation in May 2006, whereas Dr. Marandet attests that he was not involved in Lampley's care after November 2005. (*See* DE 181 at 13; DE 171-2 at ¶ 3.) Even accepting Lampley's allegation as true, it would only show that Dr. Marandet was involved in his care as of May 2006, and the claim filed against him in April 2009 would still be untimely.

something" about his condition after 2006, and so the claims raised against them in April 2009 were not timely.[3]

**B.    Deliberate Indifference**

Even if I were to ignore the statute of limitations defense, Lampley would not prevail on his Eighth Amendment claim, in any event. Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) that his medical need was objectively serious; and (2) that the official acted with deliberate indifference to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference is a high standard and is "something approaching a total unconcern for [a prisoner's] welfare in the face of serious risks," or a "conscious, culpable refusal" to prevent harm. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992); *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person

---

[3] I do not find merit to the defendants' argument that Lampley's claims are barred by the doctrine of res judicata. (*See* DE 170 at 12-14.) Although Lampley did in fact file a prior case against these doctors raising identical claims, there was no final judgment on the merits in that case. *See Lampley v. Marandet, Jaffri & Thomas*, 1:07cv401 (S.D. Ind. filed Mar. 28, 2007). Instead, the case was dismissed without prejudice for failure to exhaust administrative remedies. (DE 171-7 at 1-3.) A dismissal without prejudice generally does not preclude future litigation, nor was there any determination on the merits of Lampley's Eighth Amendment claims since the case was dismissed on procedural grounds. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990). Although Lampley would be precluded from relitigating the same exhaustion issues decided in the earlier case, the defendants have chosen not to file a dispositive motion based on an exhaustion defense. *See Hill v. Potter*, 352 F.3d 1142, 1147 (7th Cir. 2003) (determination in first suit that plaintiff failed to exhaust his administrative remedies precluded any attempt by him to relitigate the issue of whether he properly exhausted before filing that suit).

responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). "Neither medical malpractice nor mere disagreement with a doctor's medical judgment is enough to prove deliberate indifference in violation of the Eighth Amendment." *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010.) Where a medical professional has provided some level of care for a prisoner's medical condition, in order to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Synder*, 546 F.3d 516, 524 (7th Cir. 2008). Furthermore, a prisoner is not entitled to demand specific medical care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). When considering whether an inmate's medical care demonstrates deliberate indifference, courts must look to the inmate's medical care as a whole. *Garvin v. Armstrong*, 236 F.3d 896, 899 (7th Cir. 2001.)

Here, the record shows that the defendants provided Lampley with appropriate medical care. Dr. Marandet treated Lampley from October 27, 2005 to November 8, 2005, and during this period, he examined Lampley eight times, prescribed him with pain and other medications, gave him a splint for his arm, and requested that he receive a physical therapy consult. (DE 171-3 at 6-17.) Lampley was also being monitored by nursing staff during this period. (*Id.*) Dr. Marandet last saw Lampley on November 8, 2005, when he left the infirmary. (DE 171-2 at ¶ 9.)

Dr. Jaffri was Lampley's treating physician from December 2005 to January 2006, and again from February 2006 to the end of 2006. (DE 171-4 at ¶¶ 3-8.) During this period, he examined Lampley on two occasions and prescribed him with pain and other medications. (DE

9

171-3 at 19-32.) He was also being monitored by nursing staff during this period. (*Id.*) After one of his examinations Dr. Jaffri ordered physical therapy, but in the second examination some months later, he saw no signs of atrophy and found Lampley to have good range of motion. (*Id.* at 20-21, 42.) Nevertheless, Lampley received a physical therapy consultation while he was under Dr. Jaffri's care, and the therapist independently determined that Lamprey's functioning was within normal limits and that no additional treatment other than a home exercise program was necessary. (*Id*. at 17-32.)

Lampley complains that these doctors failed to ensure he receive physical therapy, but as stated above both doctors did request a physical therapy consultation for him, and he received that consultation while he was under Dr. Jaffri's care. Although it was some months between the time the requests were made and the evaluation conducted, likely due to Lampley's multiple transfers occurring during this period, there is nothing to indicate that the delay was caused by Dr. Jaffri or Dr. Marandet. *See O'Malley v. Litscher,* 465 F.3d 799, 806 (7th Cir. 2006) (prison doctor not deliberately indifferent where delay in treatment was not caused by doctor's actions); *Jones v. v. Simek*, 193 F.3d 485, 491 (7th Cir. 1999) (same). When Lampley was ultimately assessed by a physical therapist in May 2006, she determined that his functioning was within normal limits. Lampley disagrees with her assessment, but mere disagreement with a medical professional about the proper course of treatment does not establish an Eighth Amendment violation. *Berry*, 604 F.3d at 441. Without some objective evidence to establish that he was injured by the delay, he cannot prevail on an Eighth Amendment claim. *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996).

Moreover, Lampley has not named the physical therapist as a defendant, and Drs. Jaffri and Marandet can only be held liable "for their own misdeeds but not for anyone else's." *Burks v. Raemisch,* 555 F.3d 592, 596 (7th Cir. 2009). Lampley suggests that the defendants were the ones "pulling all the strings" in connection with the physical therapist's assessment, and that they dictated the outcome of her evaluation. (DE 185 at 18.) This assertion is not supported by the record. The consultation request Lampley points to in support of this argument was completed by Dr. Marandet and said nothing about limiting the scope or dictating the outcome of the therapist's evaluation. (DE 171 at 13.) Instead Dr. Marandet stated simply, "He needs PT/OT to regain function in his left wrist." (*Id.*) The request was approved by someone with the initials "D.R.," which are not the initials of either of the defendants. (*Id.*) The approval notes stated that Lampley was approved for one physical therapy visit for the purpose of evaluation and treatment with instructions for a home exercise program, with the notation, "If additional visits required please send notes." (*Id.*) Thus, contrary to Lampley's assertion, the consultation form did not expressly limit him to one physical therapy visit, but instead left it to the therapist to determine whether more visits were needed. To the extent Lampley is suggesting that there was some sort of conspiracy among the medical staff to deprive him of adequate medical care, there is no plausible basis for inferring this from the record, and Lampley cannot defeat summary judgment with "speculation" or "innuendo." *Gunville v. Walker*, 583 F.3d 979, 986 (7th Cir. 2009).

Based on the record, Lampley has failed to demonstrate that Drs. Jaffri and Marandet responded to his medical needs in a way that was so plainly inappropriate as to permit the

inference that they intentionally or recklessly disregarded his needs. Accordingly, the defendants are entitled to summary judgment.[4]

**CONCLUSION**

For these reasons, the Court:

(1) **GRANTS** the motion for summary judgment filed by Dr. Anwer Jaffri and Dr. Noe Marandet (DE 169); and

(2) **DIRECTS** the Clerk to enter judgment in favor of the defendants.

**SO ORDERED**.

**ENTERED**: October 27, 2010

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[4] I note that some of Lampley's filings suggest that he believes he has a cross-motion for summary judgment pending. (*See* DE 181 at 1; DE 182 at 1.) Lampley filed a motion for summary judgment against these defendants in January 2010, but I denied that motion in an opinion issued in June 2010. (DE 134; DE 176.) If Lampley had filed a second motion seeking summary judgment against these defendants, it would have been denied for the reasons stated in both the prior opinion and this opinion.